IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) NO. 3:17-cr-00216 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| | ) |
| LEE ROY MAYBERRY | ) |

**MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Doc. No. 83, "Motion"). Via the Motion, Defendant seeks a reduction of his 51-month sentence and immediate release from custody, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Like many other federal inmates in this district and around the country, Defendant claims that the ongoing COVID-19 pandemic, as applied to his specific health profile, satisfies the requirement of "extraordinary and compelling reasons" necessary for this Court to grant "compassionate release"[1] under Section 3582(c)(1)(A)(i), and that compassionate release is otherwise appropriate in his case. The Government has filed a response in opposition (Doc. No. 92, "Response"), arguing that the Motion should be denied because consideration of the 18 U.S.C. § 3553(a) factors counsels strongly against granting compassionate release.

BACKGROUND

On November 15, 2017, Defendant was charged in an indictment with possession with

---

[1] Motions like the instant Motion are generally known as ones for "compassionate release," and Defendant's requested relief appropriately can be referred to and conceived of as "compassionate release" or "sentence modification" (or "sentence reduction"). *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at n.2 (D. Utah Feb. 18, 2020) ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms."); *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *1 (W.D. Tenn. June 8, 2020).

intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count I), possession of a firearm during and relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count II), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Count III). (Doc. No. 1). On June 14, 2019, Defendant pled guilty to Count I and III of the indictment. (Doc. No. 66).[2] On December 5, 2019, consistent with the parties' joint sentencing recommendation pursuant to Fed. R. Crim. P. 11(c)(1)(C), this Court sentenced Defendant to serve 51 months of imprisonment—the top of the (advisory) guideline range—followed by 6 years of supervised release. (Doc. No. 80). According to BOP, Defendant's release date is July 19, 2023. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Apr. 26, 2021).

## LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Prior to 2018, only the Director of the Bureau of Prisons could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, § 603, Pub. L. No. 115-391, 132 Stat. 5239. Now, under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act,[3] a district court *may* under certain circumstances grant a defendant's motion for compassionate release (hereinafter, "defendant-filed motion"). *See United States v. Jones*, 980

---

[2] Count II was dismissed upon motion of the Government. (Doc. No. 80 at 1).

[3] That paragraph of Section 603 provides:

> (b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
> (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory."). In order to grant such a defendant-filed motion, however, a court must find that the so-called "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier." *See also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (explaining that a district court may not disregard the exhaustion requirements of Section 3582(c)(1)(A)).

Once it properly can act on a defendant-filed motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court next determines whether, in its discretion, to grant compassionate release to a defendant. In its recently issued opinion in *Jones*, the Sixth Circuit discussed the steps of the compassionate release analysis:

> The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).12 At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon* [*v. United States*], 560 U.S. [817,] 827 [(2010)]. At step three, "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

*Jones*, 980 F.3d at 1108. The court then went on to resolve the following question with respect to defendant-filed motions (as opposed to compassionate-release motions filed BOP) in particular: "given the First Step Act's procedural reforms to compassionate release, is § 1B1.13 still an

applicable—'that is, "relevant" or "appropriate,"' [*United States v. Ruffin*, 978 F.3d 1000, 1007–08 (6th Cir. 2020)]—policy statement for the purposes of the second § 3582(c)(1)(A) inquiry?" *Id*. The court noted that this is a question that has "sharply divided the courts," *id*. (citation omitted), as many district courts, including this Court, previously considered the Section 1B1.13 policy statements applicable when determining whether compassionate release was warranted. The court then chose a side, holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id*. (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).[4] Therefore, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.

In other words, because § 1B1.13 is inapplicable to defendant-filed motions, a district court adjudicating such a motion is not bound by anything § 1B1.13 has to say about—including any limitations or requirements § 1B1.13 would impose upon—the finding of extraordinary and compelling reasons. But this rule is not the only consequence of the Sixth Circuit's decision in *Jones*. Another is that the district court, in adjudicating a defendant-filed motion, may disregard the requirement of § 1B1.13(2) that the court find the defendant not pose a danger (to any other person or to the community) in order to grant compassionate release.

If, in adjudicating a defendant-filed motion, a district court determines that "extraordinary and compelling reasons" for compassionate release exist, the court then determines whether

---

[4] Prior to *Jones*, this Court treated § 1B1.13 as applicable to all motions for compassionate release, whether filed by BOP or by a defendant. The Court does not necessarily perceive that such treatment resulted in a resolution of any defendant-filed motions that was any different than the result the Court would have reached by treating § 1B1.13 as inapplicable to defendant-filed motions. But the Court does note that at least the analytical framework it used prior to *Jones* was different than the analytical framework it will use in the aftermath of *Jones*.

compassionate release is warranted in light of the Section 3553(a) sentencing factors. *See Jones*, 980 F.3d at 1112.[5] The sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
> i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
> ii) [in effect at the time of sentencing]
>
> (5) any pertinent policy statement—
> A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
> B) [and in effect at the time of sentencing]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

---

[5] As suggested above, under *Jones*, the analysis of a defendant-filed motion differs from the analysis of a BOP-filed motion in that (among other ways) the latter kind of motion—to which § 1B1.13 remains applicable—requires an intermediate determination of whether the defendant-movant poses a danger to other persons or the community. *See* U.S.S.G. §1B1.13(2).

## ANALYSIS

### APPOINTMENT OF COUNSEL

Via the Motion, Defendant seeks appointment of counsel. (Doc. No. 83 at 2). The Sixth Amendment secures the right of a criminal defendant who faces incarceration to be represented by counsel at all "critical stages" of the criminal process. *United States v. Wade*, 388 U.S. 218, 224 (1967). However, the constitutional right to assistance of counsel does not extend to motions for post-conviction relief. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Shedwick v. Warden N. Cent. Corr. Inst.*, No. 16-3203, 2016 WL 11005052 (6th Cir. Dec. 30, 2016) ("[T]here is no right to counsel in a post-conviction action."). The decision of whether to appoint counsel for the purpose of seeking compassionate release is a decision within the sound discretion of the Court. *See United States v. Stephens*, 06-cr-20365, 2020 WL 3250226, at *2 (E.D. Mich. June 16, 2020). "In exercising discretion as to whether to appoint counsel, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court." *United States v. Woods*, No. 2:03-CR-069, 2020 WL 5805324, at *3 (E.D. Tenn. Sept. 28, 2020) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)).

Defendant fails to present any unique circumstances justifying appointment of counsel. A compassionate release request is not a particularly complex claim factually or legally. *See United States v. Drayton*, No. 10-20018-01, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020) (denying motion to appoint counsel related to motion for compassionate release and noting that compassionate release claims are not particularly complex factually or legally and that defendant appeared able to adequately present his claim). Defendant has failed to articulate why he is unable to present his request for compassionate release pro se. Moreover, the Court believes that it is able

to fairly adjudicate such motions even though one side (and not the other) in unrepresented by counsel. That is not to say that learned counsel cannot contribute something, especially something regarding nuances, to a defendant's case on these motions. But it is to say that typically, the degree of substantive merit of these very fact-based motions is evident to the Court even without learned counsel advocating the merits on the defendant's behalf. Accordingly, Defendant's request for counsel is DENIED and the Court will proceed to the merits of the Motion.

## COMPASSIONATE RELEASE REQUEST

### I. DEFENDANT'S INCARCERATION IN A STATE FACILITY

Defendant is currently incarcerated at the Grayson County Detention Center in Leitchfield, Kentucky. The Court ordered the Government to address within its response to the Motion "whether this Court has authority to at least reduce Defendant's sentence now for future purposes—if not grant compassionate release now—given that, to the Court's understanding, Defendant is not in federal (Bureau of Prisons) custody but rather serving a state sentence with which his federal sentence is running concurrent." (Doc. No. 84). In its response, the Government represented:

> After the undersigned communicated with the United States Marshals Office, Grayson County Detention Center, and the U.S. Probation Officer who generated the presentence report (PSR) in this case; the following is the understanding of the undersigned as it relates to Mr. Mayberry's current custody status: The defendant is currently in federal custody at Grayson County Detention Center in Leitchfield, Kentucky. The defendant was paroled on his [Tennessee] state sentence on October 13, 2020 and was placed in full federal custody on account of the federal detainer. The defendant's Tennessee state sentence is due to expire on June 30, 2021; but, as stated above, the defendant is on parole for the state sentence. In sum, the defendant is solely in federal custody.

(Doc. No. 92 at 1-2).

The Government also asserted that "[i]f the defendant was not in federal custody but rather serving a state sentence with which his federal sentence was running concurrently, the United

States would first argue that this Court cannot grant compassionate release to the defendant on account of the defendant serving a state sentence. If a defendant is serving a concurrent federal and state sentences in state custody, a federal court probably cannot alter the state sentence under the compassionate release statute." (*Id*. at 3 (citing *Williams v. Keiser*, No. 17-cv-1040, 2020 WL 2028256, at *2 (W.D.N.Y. Apr. 28, 2020))).

Because it appears that Defendant is in federal custody, and due to the fact that the Court will not grant Defendant the relief he seeks in any event, the Court need not decide whether a defendant incarcerated in a state facility on concurrent state and federal sentences is eligible for compassionate release. *See, e.g., United States v. Blanche*, No. 2:05-cr-243, 2021 WL 795804, at *3 (E.D. Cal. Mar. 2, 2021) (declining to decide the issue of whether a defendant incarcerated in a state facility serving a concurrent state and federal sentence may be granted compassionate release and denying compassionate release on grounds that defendant had not demonstrated "extraordinary and compelling" reasons). Thus, the Court will move on to the merits of the Motion.

## II. EXTRAORDINARY AND COMPELLING REASONS

To grant the Motion, the Court would have to determine that "extraordinary and compelling reasons" exist for Defendant's compassionate release. Defendant bears the burden to show that extraordinary and compelling reasons exist warranting his release. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling.").

Defendant contends that his underling medical condition (asthma) combined with the COVID-19 pandemic constitute extraordinary and compelling reasons for his release. (Doc. No. 83 at 1).

In the Government's response, it asserts that Defendant's medical records show that he has asthma, and the "CDC notes that adults of any age who have moderate to severe asthma might be at an increased risk for severe illness from the virus that causes COVID-19. (Doc. No. 92 at 5). Thus, the Government concedes that Defendant has met his burden to demonstrate extraordinary and compelling reasons. Despite the Government's concession, the Court need not decide whether Defendant has met his burden to demonstrate that extraordinary and compelling reasons exists, because the Court below decides that compassionate release is not available to Defendant even if he were able to demonstrate extraordinary and compelling reasons.

### III.     SECTION 3553(a) FACTORS

The Government argues that Defendant's Motion should be denied because consideration of the Section 3553(a) factors militates against granting compassionate release to Defendant. (Doc. No. 92 at 6-8). The Court agrees, as reflected by the below analysis of factors. *See Jones*, 980 F.3d at 1112-13 (explaining that the district court must supply specific factual reasons in its consideration of the Section 3553(a) factors).

*The nature and circumstances of the offense* cut against compassionate release. During the instant offenses of conviction, law enforcement discovered three bags of cocaine and a loaded firearm on Defendant's person. (PSR at ¶ 8). Possession of drugs and a loaded firearm is a dangerous combination. *See United States v. Daily*, No. 1:18-CR-00006-2, 2020 WL 7695126, at *5 (M.D. Tenn. Dec. 28, 2020) (explaining that the nature and circumstances of the underlying offense weighed against release where the offense conduct involved the dangerous combination of drugs and firearms). And such a dangerous combination, in the Court's view, does not support a shortened sentence.

Furthermore, due to his prior felony, Defendant was prohibited from possessing firearms, yet did so anyway, evidencing his recidivism. *See United States v. Reed*, No. RDB-07-0470, 2020 WL 4732127, at *2 (D. Md. Aug. 14, 2020) ("[P]ossession of a firearm by a prohibited person, is in itself a serious crime and is indicative of [Defendant's] recidivism."). Relatedly, it tends to indicate a risk that Defendant would not comply with restrictions imposed on his conduct; which is vital because compassionate release would make sense only to the extent Defendant after release would comply with restrictions imposed by law, conditions of supervised release, etc. Based on these facts, the Court finds that the nature and circumstances of Defendant's underlying offense weigh against granting compassionate release.

*The history and characteristics of Defendant and the need to protect the public from further crimes of Defendant* cut against compassionate release.

The Government argues that this factor weighs against granting Defendant compassionate release because Defendant would pose a danger to the community if released. (Doc. No. 92 at 6). In support, the Government points out that Defendant was in Criminal History category VI at the time of the instant offense, and Defendant committed the instant offenses while on state parole. (*Id*. (citing PSR at ¶¶ 47-48)).

Indeed, Defendant's criminal history reveals a long history with the criminal justice system dating back to the time that Defendant was a teenager. Some of his more notable past convictions are for Sale of Cocaine, Bribery, Possession for Resale Less than 0.5 Grams of Cocaine, Felon in Possession of a Weapon, Domestic Assault, Possession of Ecstasy for Sale, and Possession with Intent to Sell or Deliver Marijuana. (PSR at ¶¶ 31-43). *See United States v. Serrano*, No. CR 13-4004 RB, 2020 WL 3869475, at *2 (D.N.M. July 9, 2020) (denying motion for compassionate release where the defendant had an extensive criminal history that included violent crimes and

firearms offenses). Moreover, the fact Defendant was on state parole at the time that he committed the instant offenses is also concerning to the Court when reviewing this factor. *See United States v. Sanders*, 466 F. Supp. 3d 779, 786 (E.D. Mich. 2020) ("Sanders's history and characteristics raise serious questions of possible dangerousness; particularly the fact that . . . was on parole at the time of this offense.").

The Court finds that based on the above-described conduct, the history and characteristics of Defendant, and the need to protect the public from further crimes of Defendant, weigh against granting compassionate release. The Court does not presume this merely because Defendant is currently incarcerated for serious offenses. The inquiry is more comprehensive than that, involving most significantly a review of Defendant's entire criminal history. Combined with his current offense, his criminal record prevents the Court from concluding that Defendant would not pose a danger to the community if released. Ultimately, Defendant's criminal record and continuous inability prior to the instant offenses to correct his criminal behavior demonstrates his repeated disrespect for the law and a substantial possibility (though admittedly, and fortunately, not a certainty) of recidivism. Accordingly, the Court concludes that these things weigh against granting compassionate release.

*The need to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner* likewise does not cut in favor of compassionate release for Defendant. The Court will first focus on Defendant's medical need to avoid a COVID-19 infection and, failing that, to avoid a poor outcome from a COVID-19 infection.

The Court will not act like it knows the extent to which Defendant's chances of COVID-19 infection would be lower if he is released than if he stays incarcerated, or how much more likely

a bad outcome upon infection would be for him as opposed to someone without his medical condition. As matter of sheer epistemology, the undersigned cannot and does not know such things; this is true despite publicly available information from medical experts and public health officials, inasmuch as they do not always agree with one another on issues related to COVID-19 and inasmuch as some seem to have reversed themselves on various issues over time.[6] In short, information and opinions regarding the prevalence of, effect of, and optimal countermeasures to COVID-19 have been in constant flux, and it would be folly for the Court to rely blindly on any particular opinion or factual assertion merely because it comes from a purportedly knowledgeable or reputable source.

Having said that, the Court is willing to accept that Defendant is at substantial risk of COVID-19 infection the Grayson County Detention Center. The Court is also willing to assume that Defendant's medical conditions make him prone to relatively bad outcomes in case of infection.

But that does not mean that these circumstances ultimately support compassionate release. For one thing, the Court would merely be speculating as to the extent of the risk of infection at the Grayson County Detention Center and as to the likelihood of a bad outcome upon infection. For another thing, the pandemic seems to be abating at least somewhat[7] (perhaps due to ongoing

---

[6] It seems clear to the undersigned that certain public health authorities, public health officials, and other public officials over time have equivocated regarding, or even starkly changed, their views concerning one or more of numerous issues, including but not limited to: whether COVID-19 can be transmitted person to person; whether persons should avoid crowds and/or otherwise alter their daily regimen due to the presence of COVID-19 in the United States; the likely death toll and mortality rate from COVID-19; whether masks/face coverings should be worn; the extent to which COVID-19 may be transmitted via contact with inanimate surfaces; and whether an effective vaccine could be rolled out during calendar year 2020.

[7] *See Coronavirus Case Count*, Washington Post, https://www.washingtonpost.com/graphics/2020/national/coronavirus-us-cases-deaths/?itid=lk_inline_manual_3 (last accessed Apr. 26, 2021) (revealing that COVID-19 cases in the United States have declined by 19% in the past week).

vaccination and/or a beginning of a semblance of "herd immunity"), this actually hurts Defendant's position. Any general attenuation of the threat of COVID-19 reasonably can be associated with attenuation of the threat of COVID-19 at the Grayson County Detention Center (subject, of course, to contrary site-specific information), which is of course the very basis for Defendant's request for compassionate release.

Additionally, given Defendant's history of criminal activity, Defendant unfortunately has demonstrated an unwillingness and/or inability to comply with rules and societal norms in at least some important respects. This is vital because the consensus is that decreasing his risk of infection upon release from custody would require him to observe public/health and societal norms related to COVID-19, such as handwashing, face-covering and social distancing. Moreover, although the record does not indicate whether Defendant has been offered the COVID-19 vaccine, Defendant will be offered the COVID-19 vaccine at some point (if he was nor been already),[8] which will also abate his risk of severe infection from COVID-19. The Court does not presume to tell Defendant he must take the vaccine; that is solely his decision to make. But the fact that he *could* choose to take the vaccine—and thus decrease his risk of infection to a huge extent—means that his concerns about COVID-19 can be addressed in a way already employed by (reportedly) tens of millions of Americans. *See United States v. Kennedy*, No. 18-20315, 2021 WL 1546538, at *1 (E.D. Mich. Apr. 20, 2021) ("The Court denies Defendant's motion for compassionate release because his access to the COVID-19 vaccine mitigates the concern about extraordinary and compelling medical conditions that might otherwise compel release."). Thus, release is not necessary to nearly eviscerate Defendant's risk from COVID-19.

---

[8] The Court cannot say when Defendant will be offered the vaccine. But it can say that that BOP reportedly has already administered more than 146,000 doses of the vaccine, *see* https://www.bop.gov/coronavirus/ (last accessed April 27, 2021), and that Grayson County Detention Center has begun offering the vaccine to its inmates.

*The sentencing guidelines and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct* do not support compassionate release. The guideline sentence for Defendant was 41-51 months. (PSR at 28). The Court sentenced Defendant to serve 51 months of imprisonment. (*Id.*).

The Court first looks at what the requested modified sentence actually would be. According to the BOP, Defendant has roughly 26 and a half months of his sentence left to serve. *See* Federal Inmate Locator, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Apr. 23, 2021) (listing Defendant's projected release date as July 19, 2023). Defendant's sentence began running (concurrently with his state sentence) on December 5, 2019. (Doc. No. 80 at 2). Thus, Defendant has served in total slightly more than 16 and a half months on this sentence thus far.[9] In other words, the modified sentence Defendant requests would (if pronounced today) amount to less than 17 months. This constitutes approximately 33 percent of his 51-month sentence without considering any possible credit for good-time served, and approximately 40 percent of his sentence assuming maximum credit for good-time served (which would mean a sentence to serve of approximately 43 months).

The modified sentence Defendant requests would be a major reduction from his (top-of-the) guideline sentence. And it would be a major departure even from a sentence at the bottom of his guideline range (41 months). This fact may weigh against his release. *See United States v. Kincaid*, 805 F. App'x 394, 395-96 (6th Cir. 2020) (holding that it is appropriate for district courts to consider the percentage of the overall sentence left to be served when addressing compassionate release motions); *Ruffin*, 978 F.3d at 1008 (affirming district court's denial of motion for

---

[9] The portion of the sentence already served plus the portion left to serve amounts to approximately 15 percent less than 51 months, presumably because BOP's current estimation of Defendant's release date accounts for a projected maximum reduction of 15 percent credit for good-time served.

compassionate release, in part because the defendant-inmate "has yet to serve even half of his 25-year sentence"). Although the guidelines of course are advisory only, and there is nothing wrong with below-guidelines sentences in general, the Court can (and in this instance does) treat such a requested variance as tending to frustrate the objective of avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

"Notably, Defendant himself agreed, via his Rule 11(c)(1)(C) plea agreement, that his original sentence of [51] months' imprisonment was appropriate." *United States v. Sanders*, No. 3:12-CR-00183, 2020 WL 6460224, at *9 (M.D. Tenn. Nov. 3, 2020). "He thus agreed that it was appropriate under the Section 3553(a) factors and overall standards." *Id.* That is to say, "[o]f course, the fact that defendant agreed to his sentence further cuts against his argument that a reduction is appropriate." *United States v. Dodds*, No. 13-20043-01-JWL, 2021 WL 84176, at *2 (D. Kan. Jan. 11, 2021) (quoting *Sanders*, 2020 WL 6460224, at *9). "The onus is on him to explain why the substantially reduced sentence he now requests would be sufficient under Section 3553(a), and in the Court's view he has failed to do so." *Sanders*, 2020 WL 6460224, at *9.

Accordingly, the Court finds that to grant Defendant compassionate release would create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. The Court also notes that the fact that Defendant has served nowhere near all of his sentence can weigh against Defendant not only on this factor, but also on other factors. *See Ruffin*, 978 F.3d at 1008 ("We have recognized that some of the § 3553(a) factors, including the "need to provide just punishment" and "to reflect the seriousness of the offense," allow courts to consider the "amount of time" that a defendant has served on a sentence when deciding whether to grant a sentence reduction."); *see also Jones*, 980 F.3d at 1115 (affirming the district court's denial of the defendant's compassionate release motion where the district court

examined the Section 3553(a) factors and reasoned that the factors weighed against granting the motion because, among other things, the defendant "had served only two years of his decade-long sentence [for non-violent drug offenses] and that [the defendant] was a repeat offender").

Additionally, the Court cannot say that requested reduction of the Court's original sentence would fully reflect the seriousness of the offense Defendant committed, provide a just punishment for his conduct, and promote respect for the law. For those reasons, the Court finds that the Section 3553(a) factors also weigh in favor of denying Defendant's Motion.

## CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that it would be inappropriate, considering the Section 3553(a) factors.

For these reasons, the Motion (Doc. No. 83) is **DENIED**.

IT IS SO ORDERED.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE